1    Counsel listed on following page.

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **NORTHERN DISTRICT OF CALIFORNIA**

10                             **SAN FRANCISCO DIVISION**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

| | |
|---|---|
| 11   DANIEL BANCROFT MORSE, et al., | **Case No. 3:10-cv-00628-SI** |
| 12              Plaintiffs, | **THE HONORABLE SUSAN ILLSTON** |
| 13          v. | **STIPULATION TO WITHDRAW FIRST AMENDED COMPLAINT AND MOTION TO STRIKE AND [PROPOSED] ORDER** |
| 14   SERVICEMASTER GLOBAL HOLDINGS, INC.; THE SERVICEMASTER COMPANY, | |
| 15   INC.; THE TERMINIX INTERNATIONAL COMPANY, L.P., and TERMINIX | **Related Cases:** **No. 09-4044** |
| 16   INTERNATIONAL, INC., and DOES 1-20, inclusive, | **No. 09-5148** **No. 09-5150** |
| 17 | **No. 09-5152** |
| 18              Defendants. | **No. 09-5154** **No. 09-5153** |
| 19 | **No. 10-3887** |

20

21

22

23

24

25

26

27

28

Joan Tucker Fife (SBN: 144572)
jfife@winston.com
Mari Overbeck (SBN: 261707)
moverbeck@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5894
Telephone:    415-591-1000
Facsimile:     415-591-1400

Amanda C. Sommerfeld (SBN: 185052)
asommerf@winston.com
Monique Ngo-Bonnici (SBN: 241315)
mbonnici@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone:    213-615-1700
Facsimile:     213-615-1750

*Attorneys for Defendants*,
SERVICEMASTER GLOBAL HOLDINGS, INC.,
THE SERVICEMASTER COMPANY, INC.,
THE TERMINIX INTERNATIONAL COMPANY, L.P., and
TERMINIX INTERNATIONAL, INC.


Nancy Hersh (SBN: 49091)
nhersh@hershlaw.com
Mark Burton (SBN: 178400)
mburton@hershlaw.com
HERSH & HERSH, A Professional Corporation
601 Van Ness Avenue, 2080 Opera Plaza
San Francisco, CA  94102-6388
Telephone: (415) 441-5544
Facsimile: (415) 441-7586

Lauren Hallinan (SBN: 60646)
lhallinan@yahoo.com
HALLINAN & WINE
Law Chambers Building
345 Franklin Street
San Francisco, California 94102
Telephone: (415) 621-2400
Facsimile:

*Attorneys for Plaintiffs*
RUBEN PABLO and BONNIE COURSEY

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

STIPULATION TO WITHDRAW FIRST AMENDED COMPLAINT AND MOTION TO STRIKE AND
[PROPOSED] ORDER -- CASE NO. 10-628 (SI)

Pursuant to Rule 7-12 of the Local Rules for the United States District Court, Northern District of California, it is HEREBY STIPULATED by and between the parties through their counsel of record as follows:

1.      Plaintiffs Daniel Bancroft Morse, Edward J. Vantil, Marco A. Alday, Jr., John T. Bahr, Percy Bickerstaff, George Blackwell, Thavarath Chan, Eliodor Craioveanu, Kristof Czeczko, Franz Desuvarieux, Clinton Drummer, Jr., Wayne K. Easley, Romero Omar Galeno, Eduardo Gabriel Livraga, Christian A. Martinez, Monte K. McGuire, James McWilliams, Eugene N. Nguyen, Danny Santos, Toby Scott Spencer, Jaime Vasquez, Henry L. Washington and Darius Webser ("Plaintiffs") hereby withdraw their First Amended Complaint, filed on December 16, 2010. (Docket No. 22.)

2.      Defendants ServiceMaster Global Holdings, Inc., The ServiceMaster Company, Inc., The Terminix International Company, L.P. and Terminix International, Inc. ("Defendants") hereby withdraw their Motion to Strike, Or, In the Alternative, Dismiss Certain Claims, filed on January 3, 2011.  (Docket No. 24.)

3.      Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Defendants consent to the filing of Plaintiffs' proposed First Amended Complaint, attached here as Exhibit "A."

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated:  February 16, 2011                    WINSTON & STRAWN, LLP

                                             _____/s/Joan B. Tucker Fife_____
                                             Joan B. Tucker Fife
                                             *Attorneys for Defendants*

                                             HERSH & HERSH, A PROFESSIONAL CORP.
                                             HALLINAN & WINE

                                             _____/s/Nancy Hersh_____
                                             Nancy Hersh

                                             _____/s/Lauren Hallinan_____
                                             Lauren Hallinan

                                             *Attorneys for Plaintiffs*

2

1

**[PROPOSED] ORDER**

2          Plaintiffs' First Amended Complaint (Docket No. 22) and Defendants' Motion to Strike, Or,

3   In the Alternative, Dismiss Certain Claims (Docket No. 24) are hereby withdrawn.  Defendants'

4   Motion to Strike, Or, In the Alternative, Dismiss Certain Claims is hereby removed from the Court's

5   March 4, 2011 calendar.

6

7          **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

8

9

10   Dated: _____2/18/11_____          _____

                                          Honorable Susan Illston
11                                         United States District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION TO WITHDRAW FIRST AMENDED COMPLAINT AND MOTION TO STRIKE AND
[PROPOSED] ORDER -- CASE NO. 10-628 (SI)

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# EXHIBIT A

NANCY HERSH, ESQ., State Bar No. 49091
AMY ESKIN, ESQ., State Bar No. 127668
MARK E. BURTON, JR., ESQ., State Bar No. 178400
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA  94102-6396
(415) 441-5544


LAUREN HALLINAN, ESQ., State Bar No. 60646
*Of Counsel*
HALLINAN & WINE
Law Chambers Building
345 Franklin Street
San Francisco, CA  94102
Telephone:  (415) 621-2400

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

DANIEL BANCROFT MORSE**,** EDWARD J.
VAN TIL, MARCO A. ALDAY, JR., JOHN T.
BAHR, PERCY BICKERSTAFF, GEORGE
BLACKWELL, THAVARATH CHAN,
ELIODOR CRAIOVEANU, KRISTOF
CZECZKO, FRANTZ DESVARIEUX,
CLINTON DRUMMER, JR., WAYNE K.
EASLEY, ROMERO OMAR GALENO,
EDUARDO GABRIEL LIVRAGA, CHRISTIAN
A. MARTINEZ, MONTE K. MCGUIRE, JAMES
MCWILLIAMS, EUGENE N. NGUYEN,
DANNY SANTOS, TOBY SCOTT SPENCER,
JAIME VASQUEZ, HENRY L. WASHINGTON,
and DARIUS WESBER,

       Plaintiffs,

vs.

SERVICEMASTER GLOBAL HOLDINGS,
INC.; THE SERVICEMASTER COMPANY,
INC.; THE TERMINIX INTERNATIONAL
COMPANY, L.P., AND TERMINIX
INTERNATIONAL, INC., AND DOES 1-20,
inclusive,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE No.  CV10-00628 SI

**FIRST AMENDED COMPLAINT
FOR VIOLATIONS OF THE
CALIFORNIA LABOR CODE;
CALIFORNIA BUSINESS &
PROFESSIONS CODE §§ 17200, *et
seq.*;**

**<u>DEMAND FOR JURY TRIAL</u>**

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

Plaintiffs DANIEL BANCROFT MORSE, EDWARD J. VAN TIL, MARCO A. ALDAY, JR., JOHN T. BAHR, PERCY BICKERSTAFF, GEORGE BLACKWELL, THAVARATH CHAN, ELIODOR CRAIOVEANU, KRISTOF CZECZKO, FRANTZ DESVARIEUX, CLINTON DRUMMER, JR., WAYNE K. EASLEY, ROMERO OMAR GALENO, EDUARDO GABRIEL LIVRAGA, CHRISTIAN A. MARTINEZ, MONTE K. MCGUIRE, JAMES MCWILLIAMS, EUGENE N. NGUYEN, DANNY SANTOS, TOBY SCOTT SPENCER, JAIME VASQUEZ, HENRY L. WASHINGTON, and DARIUS WESBER ("Plaintiffs") bring this action against Defendants, SERVICEMASTER GLOBAL HOLDINGS, INC., THE SERVICEMASTER COMPANY, INC., THE TERMINIX INTERNATIONAL COMPANY, L.P., TERMINIX INTERNATIONAL, INC., and DOES 1-20 (collectively "Terminix," "ServiceMaster" or "Defendants"), and allege on information and belief as follows:

## INTRODUCTION

1.      Plaintiffs are current and former Termite Inspectors employed by Terminix, one of the largest termite and pest control businesses in the world.   They bring this action for recovery of unpaid wages and other compensatory and equitable relief against Defendants for its violations of the California Labor Code and the California Business and Professions Code Section 17200, *et seq.* In violation of California law, Defendants exempted themselves from paying premium wages for overtime, minimum wages, and from providing other worker protections by unlawfully classifying Plaintiffs as "outside sales persons."

2.      Termite Inspectors do not qualify as "outside sales persons" under California law. Plaintiffs' work is a mixture of manual labor and other non-sales duties—such as inspecting structures for termites and writing termite reports—and outside sales activities

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

–such as selling termite services directly to customers at the site of the structure and preparing sales contracts.  Terminix required Plaintiffs and all Terminix Termite Inspectors to spend more than half their time at work on inspections, reports and other non-sales activities, such as mandatory meetings and non-exempt inside sales calls. Termite Inspectors could not and did not spend more than half their time on sales activities.  Defendants therefore were not exempt from their obligation to provide premium overtime pay, minimum wages and other worker protections, simply because when the physical inspection was finished, Termite Inspectors sold or attempted to sell Terminix services at the site.

3.     Although Plaintiffs regularly worked more than eight hours a day and more than forty hours a week Defendants did not pay Plaintiffs' any overtime wages, at times minimum wage, or properly record overtime hours.  Defendants misclassified them as "outside sales persons," because under California law,  employers do not have to cover "outside sales persons"  for overtime pay, minimum wage, or provide opportunity for meal and rest breaks.   Defendants also failed to pay full wages when due, pay full wages on discharge, provide accurate, itemized wage stubs, and reimburse necessary work-related expenses, as required by law.

4.     Defendants required mandatory overtime work and saved vast sums of money not only by avoiding the cost of  Plaintiffs' overtime labor, but also by forcing Plaintiffs to spend additional substantial work time performing duties that otherwise would be assigned to Defendants' non-exempt workforce.  So in addition  to depriving Plaintiffs of wages for overtime they worked, Defendants further exploited them under a uniform practice and policy of regularly requiring them to work additional unpaid overtime hours performing the same duties as employees Terminix classified as non-exempt, such as inside sales persons and termite re-inspectors (REIs).  Defendants thereby could and did reduce or limit its labor costs of non-exempt personnel and instead

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

relied on thousands of hours of mandatory unpaid labor by Plaintiffs and all other Termite Inspectors, the so called "exempt outside sales persons."

5.      After the filing of this Complaint, Defendants embarked upon a course of conduct which constituted retaliation against then-current employee Plaintiffs in violation of California Labor Code Section 98.6 and in violation of the decisional law governing retaliation by employers against employees for exercising their legal rights. Said conduct is set forth in detail hereinafter.

6.      Plaintiffs seek compensation for all hours worked; all penalties, liquidated damages, and other damages permitted by law; restitution and or disgorgement of all benefits obtained by Defendants from their unlawful business practices; injunctive and declaratory relief; punitive damages, all forms of equitable relief permitted by law; and reasonable attorneys' fees and costs.

<strong><u>VENUE</u></strong>

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events on which the claims are based occurred in this Court's judicial district, which includes San Mateo County and Santa Clara County, California.

<strong><u>PROCEDURAL BACKGROUND</u></strong>

8.      Plaintiffs are members of a putative class, which was defined as "All persons currently or formerly employed by Terminix to perform termite inspections within the State of California but classified as exempt from overtime wages at any time during the period of four years prior to the date of the commencement of this action through the date of final disposition of this action."  The class complaint was filed on May 30, 2008.  The motion for class certification was denied without prejudice on August 17, 2009.  Plaintiffs now bring this action on the same grounds as the class complaint.

<strong><u>STATUTE OF LIMITATIONS</u></strong>

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

9.     Plaintiffs' individual claims are not time-barred.  Pursuant to <u>American Pipe and Construction Co. v. Utah</u>, 414 U.S. 538, and <u>Crown, Cork & Seal Company, Inc. v. Parker</u>, 462 U.S. 345, the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties in the class action.  Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  <u>Id.</u> at 353.  The statute of limitations remains tolled when class certification is denied without prejudice.  <u>Smith v. City of Oakland,</u>,  2008 WL 2441925 (9th Cir.).

## JURISDICTION

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Defendants are citizens of Tennessee, and the amount in controversy exceeds $75,000.

## THE PARTIES

### Plaintiffs

11.     Plaintiff DANIEL BANCROFT MORSE resides in San Mateo County California.  Mr. MORSE worked as a Termite Inspector in Defendants' Redwood City and Burlingame, California branches from on or about October, 2001 to on or about April 2006.  During the relevant employment period, Mr. MORSE obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. MORSE was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint.

12.     Plaintiff EDWARD J. VAN TIL resides in Santa Clara County California.  Mr. VANTIL worked as a Termite Inspector in Defendants' Mountain View and San Jose, California branches from on or about March, 2006 to on or about January 29, 2010.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

During the relevant employment period, Mr. VAN TIL obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. VAN TIL was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint.

13.     Plaintiff MARCO A. ALDAY, JR. resides in Los Angeles County, California. Mr. ALDAY worked as a Termite Inspector in Defendants' Long Beach, California branch from on or about April 4, 2008 to October 22nd, 2010. During the relevant employment period, Mr. ALDAY obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. ALDAY has been at all relevant times and currently is a non-exempt employee Defendants misclassified as an "outside sales person".  Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

14.     Plaintiff JOHN T. BAHR resides in San Diego County, California.  Mr. BAHR worked as a Termite Inspector in Defendants' San Bernardino, California branch from on or about February 15, 1999 to on or about August, 2008.  During the relevant employment period, Mr. BAHR obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. BAHR was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint well as additional violations of California labor and employment law.

7

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

15.     Plaintiff PERCY BICKERSTAFF resides in Los Angeles, California.  Mr. BICKERSTAFF worked as a Termite Inspector in Defendants' West Los Angeles branch in Hawthorne, California from on or about August 17, 1998 to on or about on or about January, 2009. During the relevant employment period, Mr. BICKERSTAFF obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. BICKERSTAFF was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

16.     Plaintiff GEORGE BLACKWELL resides in Los Angeles County, California.  Mr. BLACKWELL has been employed Termite Inspector in Defendants' Long Beach, California branch from on or about November 7, 2002 to on or about July 7, 2010. During the relevant employment period, Mr. BLACKWELL obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. BLACKWELL has been at all relevant times and currently is a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

17.     Plaintiff THAVARATH CHAN resides in Los Angeles County, California.  Mr. CHAN has been employed as a Termite Inspector in Defendants' Long Beach, California branch from on or about December 12, 2006 to the present.  During the relevant employment period, Mr. CHAN obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. CHAN has been at all relevant times and currently is a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

18.     Plaintiff ELIODOR CRAIOVEANU resides in Mureș County, Romania. Mr. CRAIOVEANU worked as a Termite Inspector in Defendants' Long Beach, California branch from on or about to on or  about June 10, 2009 to November 20, 2009. During the relevant employment period, Mr. CRAIOVEANU obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. CRAIOVEANU was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint.

19.     Plaintiff KRISTOF CZECZKO resides in Los Angeles County, California. Mr. CZECZKO has been employed as a Termite Inspector in Defendants' Long Beach, California  branch from on or about February 5, 2007 to the present.  During the relevant employment period, Mr. CZECZKO obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. CZECZKO has been at all relevant times and currently is a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

20.     Plaintiff CLINTON DRUMMER, JR. resides in Los Angeles County, California.  Mr. DRUMMER worked as a Termite Inspector in Defendants' Long Beach,

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

California branch from on or about February 7, 2002 to on or about August 31, 2009. During the relevant employment period, Mr. DRUMMER obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. Drummer was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint.

21.     Plaintiff FRANTZ DESVARIEUX resides in Los Angeles County, California.  Mr. DESVARIEUX has been employed as a Termite Inspector in Defendants' Long Beach, California branch from on or about July, 1999 to the present. During the relevant employment period, Mr. DESVARIEUX obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. DESVARIEUX has been at all relevant times and currently is a non-exempt employee, who was misclassified by Defendants as an exempt "outside sales person."  Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

22.     Plaintiff WAYNE K. EASLEY resides in Los Angeles County, California. Mr. EASLEY has been employed as a Termite Inspector in Defendants' Long Beach, California branch from on or about October 29, 2007 to the present.  During the relevant employment period, Mr. EASLEY obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. EASLEY has been at all relevant times and currently is a non-exempt employee, who was misclassified by Defendants as an exempt "outside sales person."  Plaintiff suffered

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

23.    Plaintiff ROMERO OMAR GALENO resides in Los Angeles County, California.  Mr. GALENO has been employed as a Pest Technician, Reinspector, and Termite Inspector in Defendants' Long Beach, California branch from on or about March 26, 2001 to the present.  During the relevant employment period, Mr. GALENO obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. GALENO has been at all relevant times and currently is a non-exempt employee, who was misclassified by Defendants as an exempt "outside sales person."  Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

24.    Plaintiff EDUARDO GABRIEL LIVRAGA resides in Los Angeles County, California.  Mr. LIVRAGA has been employed as a Termite Inspector in Defendants' Long Beach, California branch from on or about February 6, 2008 to June 2010.  During the relevant employment period, Mr. LIVRAGA obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. LIVRAGA has been at all relevant times and currently is a non-exempt employee, who was misclassified by Defendants as an exempt "outside sales person."  Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

25.    Plaintiff CHRISTIAN A. MARTINEZ resides in Los Angeles County, California.  Mr. MARTINEZ worked as a Termite Inspector in Defendants' Long Beach,

11

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

California branch from on or about May 1, 2008 to December 30, 2008.  During the relevant employment period, Mr. MARTINEZ obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. MARTINEZ was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

26.     Plaintiff MONTE K. MCGUIRE resides in Los Angeles County, California.  Mr. MCGUIRE has been employed as a Termite Inspector in Defendants' Long Beach, California branch from on or about May, 2006 to December 14, 2009. During the relevant employment period, Mr. MCGUIRE obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. MCGUIRE was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

27.     Plaintiff JAMES MCWILLIAMS resides in Los Angeles County, California.  Mr. MCWILLIAMS has been employed as a Termite Inspector in Defendants' Carson and Long Beach, California branches from on or about August 27, 1999 to the present.  During the relevant employment period, Mr. MCWILLIAMS obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. MCWILLIAMS has been at all relevant times and currently is a non-exempt employee, who was misclassified by

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

Defendants as an exempt "outside sales person."  Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

28.     Plaintiff EUGENE N. NGUYEN resides in Los Angeles County, California.  Mr. NGUYEN has been employed as a Termite Inspector in Defendants' Long Beach, California branch from on or about September 9, 2008 to on or about August 8, 2010. During the relevant employment period, Mr. NGUYEN obtained and currently holds his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. NGUYEN has been at all relevant times and currently is a non-exempt employee, who was misclassified by Defendants as an exempt "outside sales person."  Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

29.     Plaintiff DANNY SANTOS resides in Los Angeles County, California. Mr. SANTOS worked as a Termite Inspector in Defendants' Hawthorne and Gardena, California branches in California from on or about June, 2008 to on or about December 2008.   During the relevant employment period, Mr. SANTOS obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. SANTOS was at all relevant times a non-exempt employee, who was misclassified by Defendants as an exempt "outside sales person."  Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

30.     Plaintiff TOBY SCOTT SPENCER resides in Orange County, California.

13

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

Mr. SPENCER worked as a Termite Inspector in Defendants' Laguna Hills and San Clemente, California branches in from on or about 2001 to on or about April, 2007. During the relevant employment period, Mr. SPENCER obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. SPENCER was at all relevant times a non-exempt employee Defendants misclassified as an "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint well as additional violations of California labor and employment law.

   31.  Plaintiff JAIME VASQUEZ resides in Los Angeles County, California. Mr. VASQUEZ has been employed as a Termite Inspector in Defendants' Long Beach, California branch from on or about May 14, 2009 to August 7, 2010.   During the relevant employment period, Mr. VASQUEZ obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. VASQUEZ has been at all relevant times and currently is a non-exempt employee Defendants misclassified as an exempt "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

   32.  Plaintiff HENRY L. WASHINGTON resides in Los Angeles County, California.  Mr. WASHINGTON worked as a Termite Inspector in Defendants' West Los Angeles branch in Hawthorne, California from on or about April, 2005 to on or about October 1, 2007.  During the relevant employment period, Mr. WASHINGTON obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. WASHINGTON was at all relevant times a non-exempt

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

employee Defendants misclassified as an exempt "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint.

33.     Plaintiff DARIUS WESBER resides in Los Angeles County, California. Mr. WESBER worked as a Termite Inspector in Defendants' West Los Angeles branch in Hawthorne, California from on or about December, 2004 to on or about May, 2007. During the relevant employment period, Mr. WESBER obtained and held his State of California Consumer Affairs Structural Pest Control Board license to inspect structures for the presence of or conductive conditions for termites and other wood destroying organisms. Mr. WESBER was at all relevant times a non-exempt employee Defendants misclassified as an exempt "outside sales person." Plaintiff suffered the herein described violations consistent with the violations described in the class complaint as well as additional violations of California labor and employment law.

<u>Defendants</u>

34.     Defendant SERVICEMASTER GLOBAL HOLDINGS, INC. is a Delaware corporation and holding company with its principal offices at 860 Ridge Lake Blvd., Memphis, Tennessee. On or about July 24, 2007, SERVICEMASTER GLOBAL HOLDINGS, INC., a privately held company, acquired and/or merged with Defendant THE SERVICEMASTER COMPANY, INC. a publicly traded corporation until the merger.  Defendant SERVICEMASTER GLOBAL HOLDINGS, INC. is the successor corporation and/or successor in interest of the SERVICEMASTER COMPANY and its subsidiaries and business units, which include Defendants THE TERMINIX INTERNATIONAL COMPANY, L.P. and TERMINIX INTERNATIONAL, INC., described below.  SERVICEMASTER GLOBAL HOLDINGS, INC. continues to operate pest control services through THE SERVICEMASTER COMPANY and its Terminix business unit in California, including the TERMINIX INTERNATIONAL COMPANY,

15

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

L.P, and throughout the United States and internationally.

35.     Defendant THE SERVICEMASTER COMPANY ("ServiceMaster") is or was, at all relevant times, either a privately held and or a publicly held corporation operating executive offices at 860 Ridge Lake Blvd., Memphis, Tennessee and in Downers Grove, Illinois.

36.     At all relevant times, ServiceMaster, through its Terminix business unit, provided termite and pest control services under the brand name "Terminix" to residential and commercial customers through hundreds of company-owned locations in the United States.  At all relevant times, ServiceMaster's Terminix unit is or was doing business in California as THE TERMINIX INTERNATIONAL COMPANY, L.P. and TERMINIX INTERNATIONAL, INC.

37.     THE TERMINIX INTERNATIONAL COMPANY, L.P., is a Delaware limited partnership, registered to do business in California, with its executive offices at 860 Ridge Lake Blvd., Memphis, Tennessee. Defendant TERMINIX INTERNATIONAL COMPANY, L.P., has at times relevant to the allegations herein, owned, managed and or operated the Terminix branches in California.

38.     TERMINIX INTERNATIONAL, INC. is a Delaware corporation registered to do business in California, with its principal office at 860 Ridge Lake Blvd., Memphis, Tennessee.  Defendant TERMINIX INTERNATIONAL, INC., has at times relevant to the allegations contained herein, owned, managed and or operated the Terminix branches in California.

39.     Plaintiffs do not know the true names and capacities, whether individual, partners, or corporate, of the Defendants sued herein as DOES 1-20, inclusive, and for that reason sue said Defendants under fictitious names and prays leave to amend the complaint to insert said true names and capacities in the appropriate paragraphs herein, when Plaintiffs ascertain said true names and capacities.  Plaintiffs are informed

16

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

and believe and thereon allege that said Defendants and each of them are responsible in whole or in part for Plaintiff's damages as alleged herein.

40.     At all relevant times, the Defendants, their employees, agents, successors, and each of them participated in the doing of acts or authorized or ratified the doing of the acts hereinafter alleged to have been done by the named Defendants. Plaintiffs are informed and believe and thereon allege that Defendants and each of them are responsible for the damages suffered by Plaintiffs and each of the defendants is the agent of the other defendants.

41.     Defendants and each of them are covered entities or employers within the meaning of the California Labor Code.

## FACTS

## I. SERVICEMASTER AND TERMINIX

42.     Defendant ServiceMaster is a multi-billion dollar privately held corporation with operations in California, the United States, and internationally.  Until on or about July 24, 2007, ServiceMaster was a publicly held corporation listed on the New York Stock Exchange, when SERVICEMASTER GLOBAL HOLDINGS, INC. and other investors took it private.  The ServiceMaster Company serves residential and commercial customers through a network of over 5,500 company-owned locations and franchise licensees. In the United States, ServiceMaster provides services for customers in 10.5 million homes and businesses and employs approximately 32,000 people. In addition to Terminix, the ServiceMaster's other branded business units include TruGreen, TruGreen LandCare, American Home Shield, ServiceMaster Clean, Merry Maids, Furniture Medic, and AmeriSpec. The core services of the Company include termite and pest control, lawn care and landscape maintenance, home warranties, disaster response and reconstruction, cleaning and disaster restoration, house cleaning, furniture repair, and home inspection.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

43.     ServiceMaster's Terminix unit provides termite and pest control services to residential and commercial customers.  Terminix services more than 2.6 million homes and businesses against all types of pests in forty-five states and internationally.  In the United States, among its network of approximately three hundred-fifty company-owned branches, are approximately forty-nine company-owned branches in California. All California branches which employ Termite Inspectors provide similar "free" termite inspection services to potential residential and commercial customers, re-inspections and renewal inspections to existing customers, flat fee inspections for real estate professionals, home buyers or sellers and other related products and services.

## II.    TERMINIX'S UNIFORM POLICIES FOR TERMITE INSPECTORS

44.     Terminix devised and implemented a uniform policy that required Plaintiffs and all Termite Inspectors to work long hours overtime and carry out duties of non-exempt workers but deprived them of overtime wages through the pretext of classifying them as "outside sales persons."

### A.     Terminix Policies Governing Duties Conform to State Requirements

45.     Terminix imposes uniform operational standards, policies and practices for duties of all Termite Inspectors.  These job requirements are substantially and materially similar, if not identical, at each Terminix branch in California, because the specific duties of Termite Inspectors -- who conduct inspections and prepare termite reports -- are mandated by California law and monitored under the jurisdiction of the California Structural Pest Control Board. Cal. Business and Professions Code Sections 8500 et. seq.; 16 CA ADCT. 16, Div. 19, Refs & Annos, Art. 5. Wood Destroying Organisms, Sections 1990-1999.1. Termite Inspectors, regardless of whether any selling or contract preparation occurs, must comply with the California Structural Pest Control Act, regulations and licensing.

46.     Therefore, pursuant to Terminix uniform policies in California and its own

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

State-issued operator's license, Plaintiffs' first and primary duty was and is to perform termite inspections in compliance with their California Structural Pest Control Board license requirements.

47.     All Terminix Inspectors must obtain the California Structural Pest Control Board Field Representative Branch 3 license, which requires a written examination.  The Branch 3 license authorizes inspection of structures for wood destroying organisms and or conditions conducive to infestations.

48.     Unlicensed inspections and sales of termite services or products are prohibited.  But Termite Inspectors must be licensed, whether or not they engage in selling.

49.     Termite Inspector training at Terminix focused on compliance with State requirements for inspections and written termite reports inspection methods, and acquisition of  knowledge and expertise about all structural wood destroying organisms. Terminix required Inspectors to complete continuing education courses regarding wood destroying organisms and pesticides to maintain their licenses.  Additionally, Terminix required its Termite Inspectors and REIs to undergo yearly safety training in compliance with Cal OSHA and California pest control law.

50.      Once licensed, Plaintiffs found they were required to devote most of their time to carrying out legally compliant inspections and writing State-mandated termite reports daily, regardless if they had any opportunity to make a commission or not.

B.     <u>Wages</u>

51.     Terminix sets uniform pay methods for all Termite Inspectors.  Terminix pays to Plaintiffs and all Termite inspectors a combination of base salary, standard percentage commissions on sales,  flat fees, and piece work payment of $10.

52.     Base salary, which Terminix calls a "draw" or "advance against commission" is a flat monthly amount paid every two weeks.  The amount of monthly

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

base pay is commonly $1800, $2000 or $2500.  Termite Inspectors are guaranteed their base salary each month regardless of sales performance or how many hours they work.  If the Termite Inspector does not generate enough sales commissions to cover the guaranteed wage—their sales quota, Terminix does not claw back base salary.  The sales quota the next month is increased by the amount of "deficit."  No commission is paid until the sales quota is met. A deficit in sales can carry over and accumulate each month, thereby eliminating or reducing commissions.

53.     Thus, commissions are typically 15% on a sale of termite treatment, such as fumigation, but Terminix does not pay Termite Inspectors any commissions until his or her sales for the month generate commissions that exceed the amount of base salary.  For example with 15 % commission on sales, an Inspector will earn no commissions until approximately $13,333 in Terminix services or products are sold.

54.     Terminix also pays all Termite Inspectors classified as "outside sales persons" a flat fee piece rate of $10 per termite inspection and report for current termite control customers ("Renewal" or "Re-inspections"). The $10 fees are separately itemized, usually as "labor," or "term labor" on pay stubs. Plaintiffs and all Termite Inspectors are required to perform reinspections frequently each week and even daily.  Non-exempt employees with Branch 3 licenses also perform inspections, write reports, and sell services and products to current customers.  But whether for a prospective or current customer, there is no difference in inspection and reporting requirements.

55.     Terminix never paid overtime wages to Plaintiffs and all Termite Inspectors, no matter how many hours they worked or how much time during a day they spent conducting inspections, writing termite reports, or working in the branch on other non-sales activities.

C.     <u>Required Overtime</u>

56.     Terminix required Plaintiffs and all other Termite Inspectors to work

20

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

overtime.  Pursuant to Terminix's uniform policies and practices, Plaintiffs consistently work or worked in excess of eight hours a day and often ten to fourteen hours per day during the regular workweek.

57.    Pursuant to its uniform policies and practices, Terminix required Plaintiffs and all Termite Inspectors to schedule and attempt to perform at least three or more site inspections per day. Often Terminix assigned an additional inspection site after the Inspector was in the field. Plaintiffs received print outs of their daily assignments with appointments scheduled two hours apart back- to- back with no breaks for meals, lunch or even driving.  The two-hour time periods are standard, regardless of the site's location, size, or how much time the morning branch meeting required before Plaintiffs could set out for their first appointments of the day.  Each day the physical inspections, sales activities, termite reports, branch meetings, general preparation and driving took so much time, Plaintiffs rarely were able to complete their assigned tasks within eight hours and therefore they worked for a longer time.

58.    Terminix required Plaintiffs and all Termite Inspectors to work one or more evenings a week following a full day of inspections.  Terminix knew of, required, encouraged, permitted and suffered Plaintiffs to work additional evenings. Plaintiffs spent most of their time in the evenings at the branch calling prospective customers to offer free termite inspections ("callback parties").  Non-exempt employees also made cold calls to prospective customers. On call back party days, Plaintiffs often worked more than twelve hours.

59.    Terminix required Plaintiffs and all Termite Inspectors to work at least one or more Saturdays a month for approximately six to eight hours in addition to the five-day workweek. Terminix knew of, required, encouraged, permitted and suffered Plaintiffs to work additional Saturdays.

60.    Even during the training period, before Plaintiffs were licensed to sell

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

termite control services or products, Terminix often required Plaintiffs to work more than eight hours a day but never paid for overtime labor.

## III.   PLAINTIFFS' LABOR—THE NON- OUTSIDE SALES ACTIVITIES— PREDOMINATES.

61.   Plaintiffs and all Termite Inspectors necessarily spent more than half their time on non-sales duties. Terminix required Plaintiffs to devote the majority of their work time conducting pest inspections and preparing termite reports as well performing other non-exempt activities.   Plaintiffs spent less than half their time outside the branch selling Terminix services, (including hanging door tags and knocking on doors) and completing sales contracts with customers.

62.   As described further in the example below, Plaintiffs spent about 80% of their time daily and weekly on non-outside sales activities,

### A.   Activities Prior to Inspection

63.   Before setting out for their first inspection of the day, Terminix required Plaintiffs and all Termite  Inspectors to report to their branch office to meet with their manager and prepare for their appointments by collecting, assembling and organizing the materials and equipment required for pest inspections, including various documents, forms, a codebook, protective clothing and gear, flashlight, hand tools, first aid kit, ladder, measuring wheel, clean-up items and other necessary gear and by checking on equipment.

### B.   At the Inspection Site

64.   Terminix policy required Plaintiffs and all Termite Inspectors to complete all or some of the following:

a)   View and access all areas outside and inside the structure, including the complete exterior, sub-areas, crawlspaces, decks and patios, abutments, ventilation ducts, all interiors rooms, foundations attics, porches, steps, garages and carports, and outbuildings;

22

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

b)  Complete the wells and waterway checklist if applicable;

c)  Take complete, accurate measurements of the structure and determine square and cubic footage;

d)  Draft a diagram to scale on graph paper of the floor plan and surrounding area;

e)  Inspect all accessible areas for general pests, such as rodents and ants and or wood destroying organisms, fungus, dry rot, excessive moisture and wood to earth contacts;

f)  Identify types of pests or wood destroying organisms and conditions;

g)  Locate, assess, and quantify the extent of infestation and pest damage;

h)  Identify structural areas vulnerable to future pest infestation and damage;

i)  Determine suitable methods to eradicate pests and methods to repair structural elements;

j)  Determine and assess the need for continued preventative pest control services;

k)  If there are wood-destroying organisms, record findings on a diagram: locations of pest infestation, type of organisms discovered, damage and problems;

l)  Record roof type and structural materials on the diagram sheet;

m) Write, in draft, statements describing locations of visible damage;

n)  Identify and note wood-destroying organisms, draft forms and reports, such as "Survey of Conditions Favorable to Termite and Pest Infestations," and "Report Work Sheet."

o)  Record and describe conditions considered likely to lead to future pest infestations or infections such as excessive moisture, earth-to-wood contact, and faulty grade levels and potential areas for treatment or repair;

p)  Determine treatment recommendations and or specifications,

q)  If there are termites, prepare termicide calculation worksheet;

r)  Prepare additional forms if fumigation may be required, such as "Fumigation of Connecting Structures," "Occupant's Fumigation Notice and Pesticide Disclosure," and

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

"Occupant's Fumigation Notice for Vikane Addendum;"

s)  Fill in contract and terms for pest control service based on Terminix-set prices;

65.     Plaintiffs' inspections were similar and also typical of all Termite Inspectors.  Plaintiffs on average required about one and ½ hours for everything entailed in the physical inspection for a total of two hours or more at the site.

C.     **Outside Sales Activity**

66.     Outside sales duties included meeting with customers after the physical inspection to present findings or evidence, if any, of wood destroying organisms and termites and or conducive conditions, attempting to sell Terminix products and services, and presenting a uniform contract for termite or other pest control services, such as the "California Subterranean Termite Plan & Agreement" or "California Drywood Termite Plan and Agreement".  Plaintiffs typically spent 15-30 minutes per inspection site selling services and presenting the contract. Plaintiffs and all Termite Inspectors typically do not make any sale to more than 50% or fewer of prospective customers and therefore do not complete those contracts.

D.     **Termite Reports**

67.      Plaintiffs and all Termite Inspectors spent additional hours each day working on detailed termite reports for submission to the California Structural Pest Control Board.

68.     A termite report consists of a hand- drawn diagram to scale ("graph") of the structure and describes areas inspected or inaccessible and locations of infestation and or conducive conditions.

69.     Terminix uniform policy, in compliance with detailed California Structural Pest Control Act and regulatory requirements, governs the information and format required for all reports on each termite inspection.

70.     Pursuant to California law, termite reports must be submitted to the Board

24

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

within ten days of the inspection. Terminix policies and practices required Plaintiffs and all Termite Inspectors to complete the reports for each inspection and turn them in the following day at the branch.

71.     In addition to initial field notes and graphs created at the site, reports required transfer of field notes to codes and additional information entered onto a second form for the typist, drawing of the  second, final graph,  review and correction of the typed  third form,  and transmission of the report.

72.     Plaintiffs and all Termite Inspectors have to work on termite reports at home after a full day of inspections and or at the branch early in the morning before the 7:30 or 8:a.m. meeting and or at the branch in the evenings.

73.     That Plaintiffs and all Termite Inspectors spent more than half their work time conducting inspections, preparing termite reports and on other non-sales activities is and was consistent with their employer's expectations and was in fact compliant with its own uniform operations, standards and policies.

## IV.     TERMINIX DEPRIVED TERMITE INSPECTORS OF BREAKS, REIMBURSEMENT, EMPLOYMENT RIGHTS AND WAGES

### A.     <u>Missed Breaks</u>

74.     Defendants' demand for at least three termite inspections a day scheduled at two hour intervals (sometimes double or triple-booked) and requirements that Plaintiffs answer calls at all times caused Plaintiffs to work through lunch and forgo duty-free meal breaks and rest periods of ten minutes or more for every four hours worked.

75.     Thus Defendants failed to allow meal breaks, failed to maintain time records recording such meal breaks and failed to authorize and permit rest breaks as required by California law.

### B.     <u>Failure to Reimburse</u>

76.     Pursuant to its uniform policies and practices, Terminix required Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

and all Termite Inspectors to drive significant distances to and from their appointed sites each day in their personal vehicles.  The geographical areas Terminix required its Inspectors to cover are as large as 580 square miles or more.  Terminix pays Plaintiffs and all Termite Inspectors a monthly "gas allowance" based on about 2% percent of their sales rather than mileage.  Regardless of how many miles Plaintiffs drove for work, Terminix guarantees Termite Inspectors only $100 per month for their personal vehicle expenses on the job.

77.     Defendants' gas allowance did not cover Plaintiffs' costs of operating their personal vehicles for work.

78.     Defendants failed and refused to indemnify Plaintiffs for their vehicle expenses and losses incurred and required in direct consequence of the discharge their duties or at the direction of Terminix.

79.     Defendants failed and refused to indemnify Plaintiffs for a wide range of supplies required for and in direct consequence of the discharge of duties for Defendants, including but not limited to protective gear and tools, and cell phones.

80.     In doing the above-described acts, Defendants acted in conscious disregard for the rights of Plaintiffs and acted with fraud, oppression and malice in that the Defendants willfully misrepresented to Plaintiffs their entitlement to overtime wages. They classified re-inspectors as non-exempt but Termite Inspectors as exempt, although both did substantially the same activities.  Further, Defendants purposefully did nothing to study or record the hours Plaintiffs actually worked or what they actually did during their work.  These acts entitle Plaintiffs to punitive and exemplary damages against these Defendants in an amount deemed by the trier of fact sufficient to punish, deter and make an example of them.  Plaintiffs base these damages upon the amount of ill-gotten gains Defendant acquired from this business practice, which is millions of dollars.

81. Defendants acted fraudulently, oppressively and maliciously toward Plaintiffs

herein and the said conduct included, but was not limited to, the following:  Defendants, told Plaintiffs that they were exempt employees and, therefore, were required to work overtime without being compensated therefore, Defendants told Plaintiffs that they had to work two nights a week and on Saturdays after having worked everyday of the week for more than 8 hours, without rest or lunch breaks, without being compensated for the additional work time and that they were not allowed to compute the said time over 40 hours a week into their work time and/or to record the said additional hours anywhere but were required to record their time as if it were 40 hours per week; Defendants told Plaintiffs that they were required to pay for the maintenance on the vehicles they used for work, much of the gas and all other expenses without reimbursement; Defendants told plaintiffs that they had to have at least three and often 5 or more calls per day on their schedules and that if that took so much time that they could not complete their inspection reports at work that they had to complete them at home at night and on weekends; Defendants through management routinely took customers from Plaintiffs and kept them from earning commissions due them in so doing;  Defendants and management knew that all of the foregoing was false and that Plaintiffs would believe and obey them and they made such representations with conscious disregard  for the Plaintiffs and the Plaintiffs' rights.

     82.  Defendants, in acting as set forth herein, acted with fraud, malice, oppression and a conscious disregard for the Plaintiffs, who accordingly requests that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants, and each of them, for their conduct, in an amount sufficiently large to be an example to others and deter the Defendants, and each of them, and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

## FIRST CLAIM FOR RELIEF

## (Failure to Pay Overtime Cal. Wage Order No. 5; Cal. Labor C. §§510, 1194, 1197)

83.    Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

84.    California law, including Industrial Welfare Commission Order No. 5-2001 (Wage Order No. 5-2001) of the California Industrial Welfare Commission and the California Labor Code Sections 510, 1194, and 1197, as well as Sections 200, *et seq.*, 1174, 1174.5 require Defendants to pay at least the legal minimum wage for all hours actually worked and to pay overtime compensation when due to all non-exempt employees for all hours worked over forty (40) per week, or over eight per day.

85.    Plaintiffs are non-exempt employees and are entitled to be paid proper compensation for all hours worked, including overtime hours worked.

86.    Defendants did not compensate Plaintiffs for time worked, including but not limited to compensation for all hours worked over forty (40) per week or over eight per day in carrying out their duties as pest inspectors.

87.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs have sustained damages, including loss of earnings for hours worked and for overtime hours worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

## SECOND CLAIM FOR RELIEF

## (Failure to Pay Full Wages When Due Under Labor Code
### §200 *et seq.*, §§1194, 1198, 1199)

88.    Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

89.    By failing to compensate Plaintiffs for all time worked, Defendants have

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

and continue to violate Labor Code Section 204, which requires employers, including Defendants, to pay their employees their full wages when due.

90.     Plaintiffs DANIEL BANCROFT MORSE, EDWARD J. VAN TIL, JOHN T. BAHR, PERCY BICKERSTAFF, GEORGE BLACKWELL, CLINTON DRUMMER, JR., CHRISTIAN A. MARTINEZ, MONTE K. MCGUIRE, DANNY SANTOS, TOBY SCOTT SPENCER, HENRY L. WASHINGTON, and DARIUS WESBER are no longer working for Defendants.  By failing to compensate Plaintiffs as required by California law at any time during the previous four or more years pursuant the applicable statute of limitation and tolling provisions, Defendants also have willfully failed to make timely payment of the full wages due, including in some cases, commissions, at the time they terminated employment with Defendants; and thereby Defendants have violated Labor Code Sections 201 and 202.

91.     Pursuant to Labor Code Section 1194, Plaintiffs are entitled to recover from Defendants all unpaid wages to which they are entitled, plus pre- and post-judgment interest thereon and reasonable attorneys' fees and costs incurred in prosecuting this action.

92.     Pursuant to Labor Code Section 203, Plaintiffs are also entitled to recover waiting time penalties.

## THIRD CLAIM FOR RELIEF

### (California Record-Keeping Provisions, Cal. Labor Code §§226, 1174, 1174.5, Cal Wage Order No. 5)

93.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein.

94.     Defendants knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter alia,* hours worked, to Plaintiffs as required by Labor Code Section 226(a) and the IWC Wage Order.  Such failure caused injury to

Plaintiffs, by, among other things, impeding them from knowing the amount of wages to which they are and were entitled. At all times relevant herein, Defendants have failed to maintain records of hours worked by Plaintiffs as required under Labor Code Section 1174(d).

95.     Plaintiffs are not "exempt" employees under the California Labor Code or Wage Order 5.

96.     Plaintiffs are entitled to and seek injunctive relief requiring Defendants to comply with Labor Code Sections 226(a) and 1174(d), and further seek all actual and statutory damages available for these violations under Labor Code Sections 226(e) and 1174.5.

## FOURTH CLAIM FOR RELIEF

### (Failure to Provide Meal & Rest Breaks in Violation of Cal. Labor Code §226.7)

97.     Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

98.     At all relevant times, Plaintiffs were compelled to work longer than eight (8) hours in a day and more than forty hours in a week and were deprived of rest and meal breaks, in violation of California Labor Code Section 226.7.

99.     Plaintiffs were not "exempt" employees under the California Labor Code or Wage Order 5.

100.     Defendants work demands did not provide Plaintiffs with opportunity for meal or rest breaks. Terminix knew or should have known that Plaintiffs were working without lunch and rest breaks and were not compensated for this time. Terminix's failure to compensate Plaintiffs for rest and lunch breaks was systematic, willful, knowing and intentional.

101.     Plaintiffs have been damaged by Defendants' intentional and knowing refusal to compensate them for work performed during their rest and lunch breaks and

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

seek compensation and penalties for all missed breaks in accordance with California Labor Code Section 226.7, along with appropriate damages, injunctive relief and attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF

**(Failure to Indemnify For Necessary Expenditures and Losses Incurred In Violation of Cal. Labor Code § 2802)**

102.    Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

103.    Plaintiffs incurred expenditures and losses as a direct consequence of the discharge of their job duties as Terminix Inspectors for which they were not indemnified or fully reimbursed.  Plaintiffs were not reimbursed for all out of pocket expenses such as for the cost of operating their vehicles operation to travel to their assigned on-site inspections and for tools and protective gear.  These expenditures were made at the direction of Terminix, were necessary and made in direct consequence of the discharge of their duties, but Plaintiffs were not reimbursed for these costs.

104.    California Labor Code Section 2802 provides for reimbursement of such expenditures and losses, plus interest from the date the expense was incurred. Reimbursement of "necessary expenditures or losses" also includes all reasonable costs, including, but not limited to, attorneys' fees incurred by the employees enforcing the rights granted by section 2802.

### SIXTH CLAIM FOR RELEIF

**(Failure to Pay Minimum Wage in Violation of Cal. Labor Code §1197)**

105.    Plaintiffs CHRISTIAN A. MARTINEZ, DANNY SANTOS and JAIME VASQUEZ reallege and incorporate by reference the allegations contained in the preceding and paragraphs of this complaint as if fully set forth herein.

106.    During the relevant employment period, Defendants required Plaintiffs

31

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

MARTINEZ, SANTOS and VASQUEZ to work at rates that fell below the applicable minimum wage.

107.    California Labor Code Section 1197 and Industrial Welfare Commission ("IWC") General Minimum Wage Order MW 9-2001 establish the right of employees to be paid minimum wages for their work, in amounts set by state law. IWC Wage Order 9-2001 applied to Plaintiffs' employment with Defendants at all times relevant to this complaint.

108.    Labor Code §§ 1194(a) and 1194.2(a) provide that an employee who has not been paid the legal minimum wage may recover the unpaid balance together with attorneys' fees and costs of suit, as well as liquidated damages in an amount equal to the wages unpaid and interest on those amounts, pursuant to California Labor Code § 218.6.

109.    During the relevant period of this complaint, Defendants willfully and intentionally compensated Plaintiffs MARTINEZ, SANTOS and VASQUEZ at rates so low that they fell below the state minimum wage. Defendants' failure to pay Plaintiffs MARTINEZ, SANTOS and VASQUEZ minimum wages also violated California Labor Code Sections 203, 201, 201.5, 202, and 205.5, unpaid wages at termination,

110.    Because of Defendants' unlawful failure and refusal to pay Plaintiffs MARTINEZ, SANTOS and VASQUEZ the minimum wage as required by law, Plaintiffs have suffered damages in amounts to be proven at trial and are entitled to all appropriate remedies provided by the Labor and IWC Wage Orders, including liquidated damages, attorneys' fees and costs of suit.

## SEVENTH CLAIM FOR RELIEF

### (California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*)

111.    Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

112.    The conduct of Defendants, as alleged herein, violated the California

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200, *et seq*.

113.    Plaintiffs allege that the unfair and unlawful business practices complained of herein are and were the regular business practice of Defendants.

114.    Through Defendants' failures to pay legally required wages, including overtime wages, to provide itemized statements of hours worked with payments of wages, to pay wages when due, to fail to reimburse Plaintiffs for expenses they incurred at the direction of Defendants, and other conduct alleged herein, Defendants have violated numerous specific provisions of state and federal law and has engaged in, and continues to engage in, unlawful and unfair business practices in violation of the UCL, depriving Plaintiffs of rights, benefits, and privileges guaranteed to all employees under law, and has caused Plaintiff to suffer injury in fact and to lose money.

115.    Plaintiffs are informed and believe, and based upon such information and belief allege, that by engaging in the unfair and unlawful business practices complained of herein, Defendants were able to lower their labor costs and thereby obtain a competitive advantage over law-abiding employers with which it competes.

116.    The harm to Plaintiffs in being wrongfully denied lawfully earned wages outweighs the utility, if any, of Defendants' policies or practices and, therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of the UCL.

117.    California Business and Professions Code Section 17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices. Under the circumstances alleged herein, it would be inequitable and result in a miscarriage of justice for Defendants to continue to retain the property of Plaintiffs.  Therefore, Plaintiff is entitled to restitution of the unfair benefits obtained and disgorgement of Defendants' ill-gotten gains. Plaintiffs seek

restitution of all unpaid wages owing to him, according to proof, as well as all other available equitable relief.

118.    Injunctive relief pursuant to California Business and Professions Code Section 17203 is necessary to prevent Defendants from continuing to engage in unfair business practices as alleged in this Complaint.  Defendants and/or persons acting in concert with Defendants have done, are now doing, and will continue to do or cause to be done, the illegal acts alleged in this Complaint, unless restrained and enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Plaintiffs have no plain, speedy, or adequate remedy at law, for reasons which include but are not limited to the following: (a) it is difficult to measure the amount of monetary damages that would compensate Plaintiffs for Defendants' wrongful acts; and (b) in any event, pecuniary compensation alone would not afford adequate and complete relief. The continuing violation of law by Defendants will cause great and irreparable damage to Plaintiffs unless Defendants are immediately restrained from committing further illegal acts.

119.    Plaintiffs herein take upon themselves enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action. Therefore Plaintiff seeks recovery of attorneys' fees and costs of this action to be paid by Defendants, as provided by the UCL and California Labor Code Section 218, 218.5, and 1194, and California Code of Civil Procedure Section 1021.5.

## EIGHTH CLAIM FOR RELIEF

### (By Plaintiff George Blackwell individually)

### (Retaliation in Violation of California Labor Code § 98.6)

120.    On February 12, 2010, Plaintiff filed the within action against Defendants,  case no. 3:10-CV-00628-SI, alleging failure to pay overtime pursuant to California Wage Order No. 5 and in violation of Cal. Labor Code §§ 510, 1194, and

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

1197; failure to pay full wages when due in violation of Cal. Lab. Code § 200 et seq. and Cal. Lab. Code §§ 1194, 1198, and 1199; failure to comply with record keeping provisions in violation of Cal. Lab. Code 226, 1174, 1174.5, and Cal. Wage Order No. 5; failure to provide meal and rest breaks in violation of Cal. Lab. Code § 226.7; failure to indemnify for necessary expenditures and losses incurred in violation of Cal. Lab. Code § 2802; failure to pay minimum wage in violation of Cal. Lab. Code § 1197, and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.

121.   After the complaint was filed and answered, Defendants subjected Plaintiff to adverse employment action that materially affected the terms and conditions of his employment, including but not limited to the following:

a) On March 9, 2010, Branch Manager John Cook belittled and humiliated Plaintiff in front of other employees at a branch meeting.

b) On March 10, 2010, Mr. Cook gave Plaintiff four negative performance write-ups and threatened him with termination:

c) "Previous Corrective Action (Verbal) Overdrawn for January, 2010: 2-1-10." This admonishment was for Plaintiff's supposed overdraw in January 2010. In fact, Plaintiff was not verbally or otherwise admonished for not meeting his sales quota for January until March 10, 2010. Further, while Mr. Blackwell was in overdraw for January, he worked only two weeks that month because he attended a company-sponsored Award of Excellence trip to the Dominican Republic for his 2009 work performance. Mr. Cook was aware of this fact. He combined this award trip with a previously scheduled and approved vacation with his family. Mr. Cook was also aware of this fact. Finally, this write-up was contrary to usual management policy practices: In his seven years as an Inspector, Plaintiff never received any reprimand for overdrawn in January. In every one of those seven years, he took an Award of Excellence trip combined with a family trip. It was not until after Plaintiff's complaint was filed that

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

management took action.

d) "Written 2 Warning:  Overdraw Sold, completed and collected [$] 9930 in February."  This admonishment was for Plaintiff's supposed overdraw in February 2010.  It is not management policy or practice to issue write-ups for overdraws in seasonally slow periods, other than to those who consistently fail to meet quotas month after month.  Plaintiff's previous overdraws in the month of February never provoked any reprimand of any kind.

e) "Failure to Issue Report Prior to Work Being Started on Property." This accusation that Plaintiff failed to issue a report prior to starting a pest control process is an allegation that Plaintiff violated the Structural Pest Control Act.  It is untrue and Mr. Cook contrived the entire situation.  On February 11, following a unit by unit inspection of an 118 unit apartment complex for a customer of two years, Plaintiff prepared his termite inspection report and submitted for typing the same day.  The draft report was returned by the typist for some revisions, and Plaintiff was told that Mr. Cook had it.  Plaintiff went to Mr. Cook's office, asked him for the report and was told he would get it the next morning.  In fact, Mr. Cook withheld the inspection report from Plaintiff, thereby preventing him from completing it.  Plaintiff was called by the Service Manager and told to come in at 7:00 a.m. the day of the treatment to complete the report because it was a "rush job."  Plaintiff arrived at the appointed time and again asked for the draft.  He was not given the draft and was told the work was finished the day before. Unbeknownst to him, Mr. Cook scheduled and ordered the termite treatment previously, while Mr. Blackwell attended a mandatory meeting in San Diego on February 16. Plaintiff asked for a copy of the inspection report at the performance appraisal meeting, but Mr. Cook refused to give it to him. Mr. Cook claimed the entire commission on this $79,000 job, forcing Mr. Blackwell to struggle to receive his payment through his complaints to Terminix Human Resources department. After over two months, Terminix

36

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

finally paid Mr. Blackwell his full commission.

f) "Failure to Issue a Property Report on Property and Proper Report to Customer." This accusation is another allegation that Plaintiff violated the Structural Pest Control Act. On March 10, 2010, Mr. Cook issued this write-up concerning an inspection that occurred five months before, on October 13, 2009. Mr. Cook accused Plaintiff of selling the customer a "substandard recommendation" of heat treatment for termite control, failing to state on the report that heat treatment is a "substandard recommendation at customer's request," and failing to sign off on the work completion paper. In fact, heat treatment is not a substandard recommendation: there are "only two methods for whole-house eradication of drywood termites: fumigation and wholehouse heat treatment." State of California Department of Consumer Affairs Structural Pest Control Board, "Questions and Answers Regarding Fumigation," p. 8 (Sept. 2002). On this job, Plaintiff recommended either fumigation or heat treatment to the customer. The customer obtained other bids, then called back and requested heat treatment. Plaintiff amended the termite inspection report by attaching the contract for heat treatment to it. Finally, it is contrary to usual management practice to reprimand Inspectors for failing to sign off on work completions when documents are not submitted to them for review. In this instance, management failed to submit the work completion document to Plaintiff. In the Long Beach branch, the practice is that the work documents are submitted to the Inspectors, which they review and sign. Inspectors are not required to keep track of or maintain records of jobs sold or to actively determine if and when work is completed.

g) On several occasions, Mr. Cook interfered with Plaintiff's working conditions by deliberately reducing his sales opportunities. For example, although Plaintiff meets company criteria for receiving inbound leads, Mr. Cook stopped giving these leads to him or gave him addresses he knew were not bona fide leads.

h) On several occasions, Mr. Cook required Plaintiff to undertake

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

additional daily reinspections assignments at widely spread out locations, which Mr.
Cook knew rarely lead to termite controls sales and which reduced the time Plaintiff had
to conduct inspections for new customers or find his own leads.

122.  As a result of and in reaction to these adverse employment actions, Plaintiff
suffered emotional distress, pain and suffering, which on or about March 12, 2010
disabled him from his ability to work at Terminix and which required him to take
disability leave.

123.  These adverse employment actions, which occurred as a direct result of
and in retaliation for the complaint filed herein, constitute discrimination in violation of
Cal Lab. Code § 98.6.

124.  As a result of these adverse employment actions, Plaintiff is entitled to
reimbursement for lost wages and work benefits pursuant to Cal Lab. Code § 98.6.

125.  Additionally, Plaintiffs are entitled to attorneys' fees pursuant to Cal Lab.
Code § 2699.  Plaintiffs complied with pre-lawsuit notice requirements pursuant to Cal.
Lab. Code § 2699.3 by sending written notice of statutory violations to both Defendants
and the Labor and Workforce Development Agency.  Plaintiff's notice properly included
the facts and theories to support Defendants' violation.

## NINTH CLAIM FOR RELIEF

### (By Plaintiff Thavarath Chan individually)

### (Retaliation in Violation of California Labor Code § 98.6)

126.  On February 12, 2010, Plaintiff filed the within action against Defendants,
case no. 3:10-CV-00628-SI, alleging failure to pay overtime pursuant to California Wage
Order No. 5 and in violation of Cal. Labor Code §§ 510, 1194, and 1197; failure to pay
full wages when due in violation of Cal. Lab. Code § 200 *et seq.* and Cal. Lab. Code §§
1194, 1198, and 1199; failure to comply with record keeping provisions in violation of
Cal. Lab. Code 226, 1174, 1174.5, and Cal. Wage Order No. 5; failure to provide meal

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

and rest breaks in violation of Cal. Lab. Code § 226.7; failure to indemnify for necessary expenditures and losses incurred in violation of Cal. Lab. Code § 2802; failure to pay minimum wage in violation of Cal. Lab. Code § 1197, and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

127.     After the complaint was filed and answered, Defendants subjected Plaintiff to adverse employment action that materially affected the terms and conditions of his employment, including but not limited to the following:

a) On March 10, 2010, Plaintiff's Branch Manager, John Cook, knowingly and falsely accused Plaintiff of attempting to fraudulently claim a $10 payment for conducting a reinspection.  The actual events leading up to Mr. Cook's accusation are as follows:  Plaintiff was assigned to perform a reinspection.  He confirmed his appointment with the customer.  When he arrived, the customer told Plaintiff that he expected Plaintiff to perform the treatment, because a full inspection on her home was conducted ten days earlier.  Unbeknownst to Plaintiff, that inspection was performed by Mr. Cook.  Plaintiff told the customer that it was therefore unnecessary to undertake another inspection.  Plaintiff asked the customer to sign his card as evidence he met with her so that he could request reimbursement for the cost of the trip.  The following day, Plaintiff showed Mr. Cook the signed card and requested reimbursement for the cost of gas.  He told Mr. Cook that he did not perform the inspection, nor did he submit an inspection report.  Mr. Cook told him that he would "take care of it" but instead wrote him up for attempted theft of company assets.

128.     As a result of and in reaction to these adverse employment actions, Plaintiff suffered emotional distress, pain and suffering.

129.  This adverse employment action, which occurred as a direct result of and in retaliation for the complaint filed herein, constitute discrimination in violation of Cal Lab. Code § 98.6.

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

130.    As a result of these adverse employment actions, Plaintiff is entitled to reimbursement for lost wages and work benefits pursuant to Cal Lab. Code § 98.6.

131.    Additionally, Plaintiffs are entitled to attorneys' fees pursuant to Cal Lab. Code § 2699.  Plaintiffs complied with pre-lawsuit notice requirements pursuant to Cal. Lab. Code § 2699.3 by sending written notice of his intent to file this amended complaint to both Defendants and the Labor and Workforce Development Agency.  Plaintiff's notice properly included the facts and theories to support Defendants' violation.

## TENTH CLAIM FOR RELIEF

### (By Plaintiff Kristof Czeczko individually)

### (Retaliation in Violation of California Labor Code § 98.6)

132.    On February 12, 2010, Plaintiff filed the within action against Defendants, case no. 3:10-CV-00628-SI, alleging failure to pay overtime pursuant to California Wage Order No. 5 and in violation of Cal. Labor Code §§ 510, 1194, and 1197; failure to pay full wages when due in violation of Cal. Lab. Code § 200 *et seq.* and Cal. Lab. Code §§ 1194, 1198, and 1199; failure to comply with record keeping provisions in violation of Cal. Lab. Code 226, 1174, 1174.5, and Cal. Wage Order No. 5; failure to provide meal and rest breaks in violation of Cal. Lab. Code § 226.7; failure to indemnify for necessary expenditures and losses incurred in violation of Cal. Lab. Code § 2802; failure to pay minimum wage in violation of Cal. Lab. Code § 1197, and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

133.    After the complaint was filed and answered, Defendants subjected Plaintiff to adverse employment action that materially affected the terms and conditions of his employment, including but not limited to the following:

a) "Non-compliant Hair."  On March 10, 2010, Plaintiff was ordered to cut his hair by the following morning or be terminated.  Contrary to company policy, Branch Manager John Cook and Regional Manager Raul Ortega gave Plaintiff a written

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

reprimand, which purported to quote company policy on personal appearance as follows: "Men's hair may not extend beyond the shirt collar: pony tails are not allowed."  In fact, the ServiceMaster Handbook (January 1, 2010) section on personal appearance says no such thing.  It makes no mention of hair length.  Plaintiff wore his hair in the same manner and at the same length for his entire tenure at Terminix without management comment or reprimand up until March 10.  Nevertheless, Plaintiff was forced to cut his hair that night. Subsequently, Plaintiff again was harassed by management regarding the length of is hair and forced to cut it on threat of termination,  although it was not different than he always wore it during is employment with Defendants.

b) "Falsifying Inspection Report."  On March 5, 2010, Plaintiff was ordered to meet with Mr. Cook and Mr. Ortega, both of whom insisted that Plaintiff wrote a complete termite report but performed only a limited inspection on December 16, 2009.  This is an allegation that Plaintiff violated the Structural Pest Control Act.  On February 26, 2010, two and a half months after Mr. Czeczko's inspection, Mr. Cook took it upon himself to re-inspect the premises with at least two other persons.  He also video recorded the reinspection.  Both Plaintiff's initial report and Mr. Cook's subsequent report showed no active infestations.  Both reports stated interiors were partially accessible with no findings.  The conditions noted by Mr. Cook, including a water leak, papers in the garage, water and debris in the gutter, and a recommendation for previous termite damage repairs, do not support his accusation that Plaintiff performed only a limited inspection on December 16, 2009.  Further, Plaintiff requested that a co-worker, Gabriel Livraga, witness the meeting to discuss Mr. Cook and Mr. Ortega's accusations. Mr. Cook and Mr. Ortega denied that request, and Mr. Ortega yelled abusively at both of them.

c) "Grouping Findings."  On March 17, 2010, Mr. Cook criticized Plaintiff for "grouping findings" on a March 3 inspection report.  Plaintiff regularly grouped

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

findings in his reports.  Nevertheless, Mr. Cook claimed Plaintiff's entire commission for the March 3 inspection.

134.    These adverse employment actions, which occurred as a direct result of and in retaliation for the complaint filed herein, constitute discrimination in violation of Cal Lab. Code § 98.6.

135.    As a result of and in reaction to these adverse employment actions, Plaintiff suffered emotional distress, pain and suffering.

136.    As a result of these adverse employment actions, Plaintiff is entitled to reimbursement for lost wages and work benefits pursuant to Cal Lab. Code § 98.6.

137.    Additionally, Plaintiffs are entitled to attorneys' fees pursuant to Cal Lab. Code § 2699.  Plaintiffs complied with pre-lawsuit notice requirements pursuant to Cal. Lab. Code § 2699.3 by sending written notice of his intent to file this amended complaint to both Defendants and the Labor and Workforce Development Agency.  Plaintiff's notice properly included the facts and theories to support Defendants' violation.

## ELEVENTH CLAIM FOR RELIEF

### (By Plaintiff Frantz Desvarieux individually)

### (Retaliation in Violation of California Labor Code § 98.6)

138.    On February 12, 2010, Plaintiff filed the within action against Defendants, case no. 3:10-CV-00628-SI, alleging failure to pay overtime pursuant to California Wage Order No. 5 and in violation of Cal. Labor Code §§ 510, 1194, and 1197; failure to pay full wages when due in violation of Cal. Lab. Code § 200 *et seq.* and Cal. Lab. Code §§ 1194, 1198, and 1199; failure to comply with record keeping provisions in violation of Cal. Lab. Code 226, 1174, 1174.5, and Cal. Wage Order No. 5; failure to provide meal and rest breaks in violation of Cal. Lab. Code § 226.7; failure to indemnify for necessary expenditures and losses incurred in violation of Cal. Lab. Code § 2802; failure to pay minimum wage in violation of Cal. Lab. Code § 1197, and violation of the California

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

139.    After the complaint was filed and answered, Defendants subjected Plaintiff to adverse employment action that materially affected the terms and conditions of his employment, including but not limited to the following:

a) "Performance Improvement:  Inspection of Large Multi-Unit Complex to Include Each Unit."  On March 11, 2010, Plaintiff received a written reprimand for inspecting the common areas and exterior of an 82-unit apartment complex, but not individual units.  This reprimand is contrary to previous methodologies.  Further, two weeks later, Plaintiff conducted a full inspection with Branch Manager John Cook and prepared a supplemental report, pursuant to policy.  In addition, Plaintiff stated he followed the procedures according to his training for inspections of large buildings.  Nevertheless, he was reprimanded.

b) "Verbal Warning:  Additional Wood Repair."  During the first week in March, Mr. Cook examined a site Plaintiff previously inspected and where Plaintiff had previously sold a wood repair job.  Mr. Cook claimed he found additional areas for repair, but refused to identify the areas.

140.  As a result of and in reaction to these adverse employment actions, Plaintiff suffered emotional distress, pain and suffering.

141.  This adverse employment action, which occurred as a direct result of and in retaliation for the complaint filed herein, constitute discrimination in violation of Cal Lab. Code § 98.6.

142.    As a result of this adverse employment action, Plaintiff is entitled to reimbursement for lost wages and work benefits pursuant to Cal Lab. Code § 98.6.

143.    Additionally, Plaintiffs are entitled to attorneys' fees pursuant to Cal Lab. Code § 2699.  Plaintiffs complied with pre-lawsuit notice requirements pursuant to Cal. Lab. Code § 2699.3 by sending written notice of his intent to file this amended complaint

43

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

to both Defendants and the Labor and Workforce Development Agency.  Plaintiff's

notice properly included the facts and theories to support Defendants' violation.

<u>TWELTH CLAIM FOR RELIEF</u>

**(By Plaintiff Romero Omar Galeno individually)**

**(Retaliation in Violation of California Labor Code § 98.6)**

144.    On February 12, 2010, Plaintiff filed the within action against Defendants,

case no. 3:10-CV-00628-SI, alleging failure to pay overtime pursuant to California Wage

Order No. 5 and in violation of Cal. Labor Code §§ 510, 1194, and 1197; failure to pay

full wages when due in violation of Cal. Lab. Code § 200 *et seq.* and Cal. Lab. Code §§

1194, 1198, and 1199; failure to comply with record keeping provisions in violation of

Cal. Lab. Code 226, 1174, 1174.5, and Cal. Wage Order No. 5; failure to provide meal

and rest breaks in violation of Cal. Lab. Code § 226.7; failure to indemnify for necessary

expenditures and losses incurred in violation of Cal. Lab. Code § 2802; failure to pay

minimum wage in violation of Cal. Lab. Code § 1197, and violation of the California

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

145.    After the complaint was filed and answered, Defendants subjected

Plaintiff to adverse employment action that materially affected the terms and conditions

of his employment, including but not limited to the following:

a)  "Written Warning:  Failure to phone."  On March 10, 2010, Plaintiff

was reprimanded by Branch Manager John Cook for failing to telephone Mr. Cook after

work the previous day, purportedly in violation of company policy.  Plaintiff explained

that he did not call only because he did not finish work until after 10:00 p.m. the previous

night.  Mr. Cook threatened him with immediate termination if he ever failed to call in

after work.

b)  "Performance Improvement Plan:  Do Not Request New Territory."

Contrary to usual management practices, on March 6, 2010, Mr. Cook issued a written

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

reprimand to Plaintiff because Plaintiff requested that his existing territory, Malibu, be changed to the open territory, Brentwood 90049.  Mr. Cook denied that the territory was open at all.  Plaintiff pointed out that the computer system showed that the territory was, in fact, open.  In response, Mr. Cook shouted at Plaintiff and stated that he would not discuss it.  He also ordered Plaintiff to meet with him at 7:15 a.m. the following morning, at which time he issued the write up and warned Plaintiff that if he asked to change his territory again he would be terminated for insubordination.  In fact, Inspectors routinely request changes in territory.  Those changes are frequently accommodated, particularly for long- time employees such as Plaintiff.

146.   These adverse employment actions, which occurred as a direct result of and in retaliation for the complaint filed herein, constitute discrimination in violation of Cal Lab. Code § 98.6.

147.   As a result of and in reaction to these adverse employment actions, Plaintiff suffered emotional distress, pain and suffering.

148.   As a result of these adverse employment actions, Plaintiff is entitled to reimbursement for lost wages and work benefits pursuant to Cal Lab. Code § 98.6.

149.   Additionally, Plaintiffs are entitled to attorneys' fees pursuant to Cal Lab. Code § 2699.  Plaintiffs complied with pre-lawsuit notice requirements pursuant to Cal. Lab. Code § 2699.3 by sending written notice of his intent to file this amended complaint to both Defendants and the Labor and Workforce Development Agency.  Plaintiff's notice properly included the facts and theories to support Defendants' violation.

## THIRTEENTH CLAIM FOR RELIEF

### (By Plaintiff Eduardo Gabriel Livraga individually)

### (Retaliation in Violation of California Labor Code § 98.6)

150.   On February 12, 2010, Plaintiff filed the within action against Defendants, case no. 3:10-CV-00628-SI, alleging failure to pay overtime pursuant to California Wage

45

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

Order No. 5 and in violation of Cal. Labor Code §§ 510, 1194, and 1197; failure to pay full wages when due in violation of Cal. Lab. Code § 200 *et seq.* and Cal. Lab. Code §§ 1194, 1198, and 1199; failure to comply with record keeping provisions in violation of Cal. Lab. Code 226, 1174, 1174.5, and Cal. Wage Order No. 5; failure to provide meal and rest breaks in violation of Cal. Lab. Code § 226.7; failure to indemnify for necessary expenditures and losses incurred in violation of Cal. Lab. Code § 2802; failure to pay minimum wage in violation of Cal. Lab. Code § 1197, and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

151.    After the complaint was filed and answered, Defendants subjected Plaintiff to adverse employment action that materially affected the terms and conditions of his employment, including but not limited to the following:

a) In or about the first week of March, 2010, Branch Manager John Cook issued Plaintiff a written reprimand for selling a treatment with the financing interest rate set at 10% rather than Terminix's standard 18% after completion of an inspection conducted in June, 2008.  Plaintiff in fact obtained authorization from management to offer and write the contract with the 10% interest rate.  He did not change the rate on the contract.  Further, Plaintiff pointed out to Mr. Cook that until two months prior to the reprimand, file cabinets were not locked and everyone had access to them.  Nevertheless, Plaintiff was told this was a final warning and was threatened with termination the next time he "violated" any company policy or rule.

152.    This adverse employment action, which occurred as a direct result of and in retaliation for the complaint filed herein, constitute discrimination in violation of Cal Lab. Code § 98.6.

153.    As a result of and in reaction to these adverse employment actions, Plaintiff suffered emotional distress, pain and suffering.

154.    As a result of this adverse employment action, Plaintiff is entitled to

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

reimbursement for lost wages and work benefits pursuant to Cal Lab. Code § 98.6.

155.    Additionally, Plaintiffs are entitled to attorneys' fees pursuant to Cal Lab. Code § 2699.  Plaintiffs complied with pre-lawsuit notice requirements pursuant to Cal. Lab. Code § 2699.3 by sending written notice of his intent to file this amended complaint to both Defendants and the Labor and Workforce Development Agency.  Plaintiff's notice properly included the facts and theories to support Defendants' violation.

## FOURTEENTH CLAIM FOR RELIEF

### (By Plaintiff James McWilliams individually)

### (Retaliation in Violation of California Labor Code § 98.6)

156.    On February 12, 2010, Plaintiff filed the within action against Defendants, case no. 3:10-CV-00628-SI, alleging failure to pay overtime pursuant to California Wage Order No. 5 and in violation of Cal. Labor Code §§ 510, 1194, and 1197; failure to pay full wages when due in violation of Cal. Lab. Code § 200 *et seq.* and Cal. Lab. Code §§ 1194, 1198, and 1199; failure to comply with record keeping provisions in violation of Cal. Lab. Code 226, 1174, 1174.5, and Cal. Wage Order No. 5; failure to provide meal and rest breaks in violation of Cal. Lab. Code § 226.7; failure to indemnify for necessary expenditures and losses incurred in violation of Cal. Lab. Code § 2802; failure to pay minimum wage in violation of Cal. Lab. Code § 1197, and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

157.    After the complaint was filed and answered, Defendants subjected Plaintiff to adverse employment action that materially affected the terms and conditions of his employment, including but not limited to the following:

a) Denial of Worker's Compensation:  On March 2, 2010, Plaintiff fell from a ladder while performing a termite inspection at a customer's house.  The fall caused him serious injury resulting in his being transported by ambulance to the hospital. The subsequent hospitalization resulted in his inability to return to work until he was

cleared for light or modified duty by the Terminix physician.  When Mr. McWilliams

presented himself for such light or modified duty, however, Mr. Cook claimed there was

no such work for him and ordered him to go home. Mr. McWilliams remains at home but

ready, willing and able to return to modified duty.  It is the usual practice to assign

injured Termite Inspectors to modified duties of desk work, when they are authorized to

return to work by a physician.  Plaintiff sought worker's compensation coverage. He was

denied the coverage due to the intentionally false and misleading statements of Raul

Ortega and John Cook, two of Defendants' management personnel in the Long

Beach/Gardena office who supervised and controlled Plaintiff.  The misrepresentations

included, which were made to a workers' compensation investigator and others, included:

1) that Plaintiff had faked his injuries; 2) that he had not fallen from the ladder; 3) that he

was going to be terminated and that that was the motivation for his conduct; and 4) that

he was an old friend of the home owner and that he and the home owner had colluded to

get insurance from worker's compensation. In fact, Plaintiff did sustain actual injuries

from an accidental fall from a ladder during an inspection.  Furthermore, neither the

Plaintiff, nor his wife or children nor the homeowner or his family ever had any personal

relationship whatsoever.  Plaintiff and the customer had met only once previously, when

Mr. McWilliams, on behalf of his employer, Terminix had inspected the customer's

home for pests. The misrepresentations were completely and intentionally false and were

intended to, and did, result in the denial of worker's compensation to the injured Plaintiff.

These actions were taken by Defendants' management personnel in retaliation for

Plaintiff having become a plaintiff in this lawsuit.

158.    This adverse employment action, which occurred as a direct result of and

in retaliation for the complaint filed herein, constitute discrimination in violation of Cal

Lab. Code § 98.6.

159.    As a result of and in reaction to these adverse employment actions,

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

Plaintiff suffered emotional distress, pain and suffering.

160.     As a result of this adverse employment action, Plaintiff is entitled to reimbursement for lost wages and work benefits pursuant to Cal Lab. Code § 98.6.

161.     Additionally, Plaintiffs are entitled to attorneys' fees pursuant to Cal Lab. Code § 2699.  Plaintiffs complied with pre-lawsuit notice requirements pursuant to Cal. Lab. Code § 2699.3 by sending written notice of his intent to file this amended complaint to both Defendants and the Labor and Workforce Development Agency.  Plaintiff's notice properly included the facts and theories to support Defendants' violation.

162.  Defendants, in acting falsely and fraudulently as set forth above, conducted themselves in a manner that requires that Defendants pay punitive damages and Plaintiffs request that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants, and each of them, for their conduct, in an amount sufficiently large to be an example to others and deter the Defendants, and each of them, and others from engaging in similar conduct in the future.  The aforesaid wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.     A declaratory judgment that the policies and practices complained of herein are unlawful under the laws of California;

B.     Appropriate equitable and injunctive relief to remedy Defendants' violations of the laws of California, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful policies and practices;

C.     An award of damages, including, but not limited to any compensatory, incidental or consequential damages commensurate with proof at

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES

trial for the acts complained of herein; statutory penalties, and restitution to be paid by Defendants according to proof;

    D.    General damages according to proof;


    E.    Pre-Judgment and Post-Judgment interest, as provided by law;

    F.    Such other injunctive and equitable relief as the Court may deem just and proper; and

    G.    Attorneys' fees and costs of suit, including expert fees and fees pursuant to California Labor Code Section 218.5 and 1194, California Code Civil Procedure Section 1021.5, and other applicable laws.

    H.    Punitive damages.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims to which a right to jury trial exists.

DATED:

                HERSH & HERSH
                A Professional Corporation


                By_____
                    NANCY HERSH
                    Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF
CALIFORNIA LABOR AND BUSINESS AND PROFESSIONS CODES